UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RODNEY RYLE and CATHY RYLE,    :
                               :
          Plaintiffs,          :CIVIL ACTION NO 3:04-CV-2800
                               :
          v.                   :(JUDGE CONABOY)
                               :
NES RENTALS (NATIONAL          :
EQUIPMENT SERVICES, INC.) and  :
GENIE INDUSTRIES, INC.,        :
                               :
          Defendants.          :

MEMORANDUM AND ORDER

In this Memorandum, we consider two motions for summary judgment: the Motion for Summary Judgment by the Defendant NES Rentals, (Doc. 33), and the Motion for Summary Judgment of Genie Industries, Inc., (Doc. 34).  Plaintiffs filed the underlying action on December 27, 2004, based on injuries sustained by Plaintiff Rodney Ryle when a rented lift device tipped over causing him to fall approximately thirty to forty feet.  (Doc. 1.) Plaintiffs have filed opposition briefs to both motions, (Docs. 41, 42), and Defendant Genie filed a reply brief on March 30, 2006, (Doc. 43).  Defendant NES did not file a reply and the time for such filing has passed.  Therefore, the pending motions are ripe for disposition.  For the reasons discussed below, we conclude that Defendants have not met their burden and we deny both motions.

## I. Background

The accident at issue occurred on June 24, 2003, at the Milford Bible Church in Milford, Pennsylvania.  (Doc. 1.)

1

Plaintiff Rodney Ryle, was then and continues to be the pastor of the church.  (*Id.*)  Plaintiff Cathy Ryle is his wife.  (*Id.*) George Lewis, a member of the church, had arranged to rent lift equipment from Defendant NES to change light bulbs in the church. (Doc. 34 Att. 1 ¶¶ 4-5.)   The products rented were the 1999 Genie Model AWP-40S aerial lift ("AWP") and 1999 Model AWP Super-Straddle ("the Super-Straddle").  (*Id.* ¶ 1.)  Defendant Genie designed both pieces of equipment and sold them to NES in 1999.  (*Id.* ¶ 2.)  Mr. Lewis was not at the church to accept delivery from NES employee William Wruble, but Plaintiff Ryle and the church sexton, Robert Barber, were.  (*Id.* ¶¶ 6-7.)

Normally Wruble would set up and run through a demonstration of the Super-Straddle for NES customers.  (Doc. 34 Att. 1 ¶ 13.) He was unable to do so at the time of delivery because a class was in session at the front of the Church sanctuary and there was a low ceiling in the rear of the sanctuary.  (*Id.* ¶ 14.)  Instead of the demonstration, Wruble gave Ryle some verbal instruction on the set-up and operation of the equipment.  (*Id.* ¶ 15; Docs. 41, 42 at 4.) At some time after Wruble left, Ryle set up the AWP/Super-Straddle. (Doc. 42 at 4.)

The AWP and Super-Straddle are two separate pieces of equipment.  (Doc. 42 at 2.)  The AWP is a work platform that can be raised to a height of forty feet.  (*Id.*)  Before it can be raised, four outriggers must be installed for stability purposes - once

they are engaged, an electrical interlock on the AWP allows the platform to be raised. (*Id.*) Once the outriggers are properly installed, four green lamps corresponding to the four outriggers become illuminated. (*Id.*) If the outriggers are not engaged, the electrical interlock system disables the lift controls and, therefore, the platform cannot be raised. (*Id.*) The Super-Straddle allows the AWP to be used over fixed objects such as pews. (*Id.* at 3.) The AWP/Super-Straddle combination is intended to be used only with the outriggers, but the electrical interlock system does not have the same effect. (*Id.* at 3-4.) Rather, once the Super-Straddle sockets are inserted into the outrigger receptacles located at the base of the AWP, the outrigger interlock and visual alerts activate as if the outriggers were engaged. (*Id.* at 3.) This means that the platform can be raised without the outriggers in place. (*Id.*) Several warning decals and notices are placed on the Super-Straddle. (Doc. 34 ¶¶ 17-27.) Information about the installation of the outriggers and the danger of failing to do so is included in the decals affixed to the Super-Straddle. (*Id.* ¶¶ 20, 24, 26.)

Plaintiff Rodney Ryle set up the AWP/Super-Straddle but did not attach the outriggers. (Doc. 42 at 4.) He then stepped on the platform and elevated the AWP/Super-Straddle. (*Id.*) When the AWP neared its full extension of approximately forty feet, the Super-Straddle tipped over, partially ejecting Ryle, who struck his head

on one of the Church pews.  (Doc. 34 ¶ 39.)

Claiming severe and permanent brain injuries, Rodney Ryle and his wife Cathy filed suit against Genie and NES on December 27, 2004.  (Doc. 1.)  The Complaint includes counts for negligence, breach of implied warranties, breach of express warranties, strict products liability and loss of consortium against both Defendants. (*Id.*)

NES and Genie filed the pending motions on February 28, 2006. (Docs. 33, 34.)  Plaintiffs filed briefs in opposition to each motion on March 20, 2006.  (Docs. 41, 42.)  Genie filed a reply on March 30, 2006.  (Doc. 43.)  NES did not file a reply and the time for such filing has passed.  Therefore both summary judgment motions are ripe for disposition.

## II. Discussion

### A.  *SUMMARY JUDGMENT STANDARD*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury*, 114 F.3d 407, 410 n.4 (3d Cir. 1997)(citing Fed. R. Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

4

genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248; *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227, 1233 (3d Cir. 1988).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 257.  In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact.  The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Celotex*, 477 U.S. at 325.  The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317,

5

324 (1986).  When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial.  *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**B.  *PLAINTIFFS' CLAIMS***

Plaintiffs withdraw their claims for breach of express warranty against both Defendants.  (Doc. 41 n.1; Doc. 42 n.1.) Therefore, Counts III and VII of Plaintiffs' Complaint are dismissed.

After a thorough review of the parties' submissions, we conclude that this is a case where evidentiary facts are in dispute and conflicting evidence must be weighed.  Therefore, summary judgment is not proper and we must deny Defendants' motions.

**1.  *Unreasonably Dangerous Product***

Defendants argue generally that Plaintiffs cannot prove an element common to claims for negligence, breach of implied warranties and strict liability: recovery is dependent upon proof

6

that the Super-Straddle is an unreasonably dangerous product and

Plaintiffs cannot make the required showing.[1]  (Doc. 35 at 4.)

Specifically, Defendants maintain that Plaintiffs cannot do so

because "a product supplied with instructions that, if followed,

make it safe for use, may not be found to be defective and

unreasonably dangerous."  (*Id.* at 5.)  In support of their

position, Defendants contend that "when [Genie's] instructions are

followed and its warnings observed there is no dispute that proper

use of the outriggers eliminates the tip-over hazard and that Genie

supplied detailed instructions and extensive warnings regarding the

installation of the outriggers.  (*Id.*)

    Defendants rely upon the "read and heed" legal principle set

out in the Restatement (Second) of Torts : "A manufacturer who

accompanies his product with a suitable warning 'may reasonably

assume that it will be read and heeded; and a product bearing such

a warning, which is safe for use if it is followed, is not in a

defective condition, nor is it unreasonably dangerous.'" (Doc. 35

at 5 (quoting Restatement (Second) of Torts § 402A comment j).)

    We conclude that summary judgment is not appropriate based on

this principle.  Defendants' cited authority is not dispositive

because the cases relied upon did not address whether a product was

unreasonably dangerous in the context of a design defect claim.

---

    [1]  Defendant NES joins in Defendant Genie's arguments
regarding strict liability and warranty.  (Doc. 39 at 5.)

(Doc. 35 at 5-6 (citing *Davis v. Berwind Corp.*, 690 A.2d 186 (Pa. 1997); *Mackowick v. Westinghouse Electric Corp.*, 575 A.2d 100 (1990); *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984); *Incollingo v. Ewing*, 282 A.2d 206 (Pa. 1971).)  Defendants aver that *Davis* applied the "read and heed" defense to a situation similar to ours. (Doc. 35 at 6.)  However, an important distinction is that no alternative design was suggested or considered in *Davis*.  The *Davis* court noted that the Superior Court had reversed the trial court's verdict for the plaintiff, holding that the defendants who were found liable had "done what was required of a responsible manufacturer *by providing a safety device*, affixing warnings on the discharge doors and providing additional warnings cautioning against removal of the safety device in the product manual." *Davis*, 690 A.2d at 189 (emphasis added).  Here, a key component of that holding is in question: whether Genie, the manufacturer, provided an adequate safety device.[2]

Based on these distinctions, we cannot conclude that the AWP/Super-Straddle is not unreasonably dangerous as a matter of

_____

[2] We also note that courts which have adopted the Restatement (Second) of Torts have rejected Comment j in the context of a design defect case.  *See*, *e.g.*, *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328 (Tex. 1998).  *Uniroyal* discusses the "heavy criticism [of Comment j] from a host of commentators," (*id.* at 336), and the rejection of Comment j in the Restatement (Third) of Torts, including the statement that "[w]arnings are not . . . a substitute for the provision of a reasonably safe design." *Uniroyal*, 977 S.W.2d at 336 (quoting Restatement (Third) of Torts: Products Liability § 2 cmt. l).

law.  Therefore, Defendants are not entitled to summary judgment based on their argument to the contrary.  Because this is essentially the only argument Defendants' offer in support of their motions as they apply to strict liability, Plaintiff's strict liability claims go forward.

**2.   *Negligence***

**a.   *Genie***

Similarly, in supporting their motion as it pertains to Plaintiffs' negligence claim, Defendant Genie argues from the presumption that Plaintiffs cannot prove that the AWP/Super-Straddle was unreasonably dangerous, i.e., defective.  (*See*, *e.g.*, Doc. 35 at 4, 11; Doc. 43 at 7.)  Because we have rejected this argument, Plaintiffs' negligence claim against Genie may go forward.

**b.   *NES Rentals***

NES provides an independent response to Plaintiffs' negligence claim: summary judgment on this claim is warranted because there will be no evidence at trial that the NES delivery person, William Wruble, did not adequately deliver/instruct in the use of the Super-Straddle.  (Doc. 39 at 4.)  This conclusion is based on Defendant NES's assertion that expert testimony is needed to establish the breach of a standard of care and Plaintiffs' experts have not been critical of the equipment, delivery or instruction provided by NES employee Wruble.  (*Id.*)

We conclude that Defendant NES's premise is faulty.  First, NES's assertion that expert testimony is necessary to show a breach of a standard of care due to "the nature of Plaintiffs' claim," (*id.*), may be true for the design aspect of the claim but is not true as a matter of law in all aspects of a negligence claim.  *See* Fed. R. Evid. 702.  Second, it is an undisputed fact that the NES delivery employee generally does a demonstration and that he did not do so in this case.  (*See supra* p. 2.)  NES's declarative statement, without more, does not satisfy their burden at this stage of the proceedings.  Therefore, Plaintiffs' negligence claim against NES may go forward.

## 3.   *Assumption of the Risk*

Defendants argue that the extensive warnings provided on the Super-Straddle can only lead to the conclusion that Ryle voluntarily subjected himself to a known danger when he used the Super-Straddle without the outriggers.  (Doc. 35 at 8.)  Plaintiffs maintain that "[t]he doctrine of assumption of the risk connotes venturousness in voluntarily incurring a risk the nature and extent of which are fully appreciated.  Assuming a risk involves the meeting of a subjectively known risk under circumstance that manifest a willingness to accept such a risk." (Doc. 41 at 19 (citing *Childers v. Power Line Equip. Rentals, Inc.*, 681 A.2d 201, 208 (Pa. Super. 1996)).)  Plaintiffs acknowledge that Ryle's conduct may have been careless, but when viewed in the light most

10

favorable to Plaintiffs, he did not assume any risk of harm.

Given the evidence presented thus far, we cannot say at this stage of the proceedings that the assumption of the risk doctrine applies as a matter of law.  Therefore, at this time we reject Defendants' argument that it is a bar to recovery.

**4.   *Implied Warranty***

We conclude that Defendants have not met their burden regarding Plaintiffs' implied warranties claims.  In its original brief, Genie simply notes in a footnote that these claims are time-barred, citing *Patton v. Mack Trucks, Inc.*, 519 A.2d 959 (Pa. Super. 1986), *appeal denied*, 531 A.2d 431 (Pa. 1987).  Plaintiffs acknowledge a four-year limitations period beginning when the seller tenders delivery of the goods.  (Doc. 41 at 23.)  However, Plaintiffs aver that delivery took place when the equipment was delivered to the church, not when it was delivered from Genie to NES in 1999.  (*Id.* at 22-23.)  Genie replies that delivery took place in 1999 as far as Plaintiffs' implied warranties claim against Genie and Plaintiffs have cited no decisional law to the contrary.  (Doc. 43 at 9.)  Genie's reply does not provide any citation or analogy of applicable caselaw.  As noted above, their original argument on this issue was cursory at best.

Because we find that Defendants have not thoroughly set out and analogized the applicable law on this issue, we decline to grant summary judgment on the implied warranty claims.

*C.   SANCTIONS*

Plaintiffs request the Court to impose sanctions and the award of fees and costs in the amount of $5,000 against Defendant Genie. (Doc. 41 at 23.)  The request is based on the assertion that "[t]he record is abundant with evidence that Plaintiffs' claims are meritorious." (*Id.*)

As the parties' submissions and our review thereof indicate, the law is far from crystal clear regarding some issues under consideration.  Therefore, we decline to impose sanctions on the basis suggested by Plaintiffs.

### III. Conclusion

For the reasons discussed above, the pending motions for summary judgment, (Docs. 33, 34), are DENIED.  Based on Plaintiffs' withdrawal of their claims for express warranty, Counts III and VII of Plaintiffs' Complaint, (Doc. 1), are dismissed.  An appropriate Order follows.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: April 11, 2006

12

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYANIA

RODNEY RYLE and CATHY RYLE,      :
                                 :
        Plaintiffs,              :CIVIL ACTION NO 3:04-CV-2800
                                 :
        v.                       :(JUDGE CONABOY)
                                 :
NES RENTALS (NATIONAL            :
EQUIPMENT SERVICES, INC.) and    :
GENIE INDUSTRIES, INC.,          :
                                 :
        Defendants.              :

## ORDER

AND NOW, THIS 11th DAY OF APRIL 2006, FOR THE REASONS SET OUT IN THE ACCOMPANYING MEMORANDUM, IT IS HEREBY ORDERED THAT:

1.    The Motion for Summary Judgment by the Defendant NES Rentals, (Doc. 33), is DENIED:

2.    The Motion for Summary Judgment of Genie Industries, Inc., (Doc. 34), is DENIED;

3.    Based on Plaintiffs' withdrawal of their claims for express warranty, Counts III and VII of Plaintiffs' Complaint, (Doc. 1), are dismissed;

4.    The Clerk of Court is directed to mark the docket.


                          S/Richard P. Conaboy
                          RICHARD P. CONABOY
                          United States District Judge

13